UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SYLVIA HINES,                                              :

                Plaintiff,          :      04 Civ. 5903   (PAC)

  - against -                                             :      MEMORANDUM
                                                                 OPINION & ORDER
SERGEANT C. SMITH, DR. GOLDSTEIN,         :
and NURSE WILLIAMS,
                                                    :

                Defendants.
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Sylvia Hines ("Hines"), an inmate at Bedford Hills Correctional Facility, brings this complaint pro se alleging various denials of her constitutional rights by prison personnel in violation of 42 U.S.C. § 1983. Hines seeks an unspecified amount of monetary damages to compensate for these violations. Defendants now move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's amended complaint. After a careful review of Plaintiff's amended complaint and all supporting documentation, the Court grants Defendants' motion to dismiss in full.

## UNDERLYING FACTS

Plaintiff's amended complaint alleges claims against three individuals employed at Bedford Hills: (1) Defendant Coleman Smith ("Sergeant Smith"), who works the 3-11 p.m. shift on the West Wing; (2) Dr. Lori Beth Goldstein, M.D. ("Dr. Goldstein"), a physician who works in the regional medical unit; and (3) Nurse Elizabeth Williams ("Nurse Williams"), a nurse employed in

1

the regional medical unit. Because Plaintiff's claims come before the Court on a motion to dismiss, all facts are taken from the amended complaint and supporting documentation.

A. Claims Against Sergeant Smith

Hines has been housed at Bedford Hills Correctional Facility ("Bedford Hills"), a maximum security state penitentiary, since approximately August 1999. In March 2002, Hines was transferred to the West Wing of Bedford Hills, where Sergeant Smith works the 3 p.m. to 11 p.m. shift. Hines claims that, in July 2002, Sergeant Smith began harassing her for unknown reasons, and sets forth a number of unrelated incidents in which Sergeant Smith allegedly harassed Hines and subjected her to cruel and unusual punishment.

On an unspecified day in July 2002, when the outside temperature was about 90 days, Sergeant Smith allegedly instructed Officer Wheeler to lock Hines's cell flap, even though Plaintiff was not keeplocked. Plaintiff reported Sergeant Smith's actions the next day, and "soon thereafter," Sergeant Smith and Officer Wheeler began searching Hines's cell every other day. After Hines filed a grievance against Sergeant Smith in October 2002, the harassment got worse. Sergeant Smith and Officer Wheeler took part of her monthly supplies away from her, leaving her with less supplies than other inmates on the wing, and when there was extra food, Sergeant Smith would allow every inmate on the wing except Hines to have the food.

Hines suffers from a number of health problems, for which she takes medication. On November 24, 2002, while Hines was in the yard, she experienced dizziness. Officer Ware refused to escort Hines to the regional medical unit, so Hines's friend Susan walked her there. At some point, Hines lost her balance, which caused her to throw her back out so badly that she could not stand up straight. Eventually, however, Hines made it to the regional medical unit. She informed Nurse Mallineu, who was dispensing mental health medications, that she had fallen, but Nurse

Mallineu would not allow Hines to take any medication for the pain. Hines was forced to go back to her cell alone, and on the way she tripped and fell over a ladder, paint and paint trays and fell to her knees.

When Hines returned to her cell, she fell asleep. She was shaken awake by a female officer, who ordered her to get dressed so that Officer Ware could escort her to the regional medical unit. Once in the medical unit, Hines, who claims that she was under the influence of unidentified mental health medications, again fell asleep. Sergeant Smith began banging some kind of metal objection and yelling that Hines should "tell him the story about the fall," or "something to that effect." Hines awoke and told Sergeant Smith that she could not speak because she was under the influence of Antivert and mental health medications, but the nurses in the medical unit began accusing Hines of "drinking hootch" or using illegal drugs. When a nurse told Sergeant Smith that Hines was "incoherent" and "despondent," Sergeant Smith said "I don't care, get a story out of her anyway," so the nurse shone a flashlight in her eyes and slapped her face. Hines was then escorted back to her cell.

On December 19, 2002, Sergeant Smith gave Hines a Tier I ticket and found her guilty of an unspecified charge. As a result, Hines received a 13-day loss of recreation privileges. While Hines suggests that the ticket was merely a form of harassment by Sergeant Smith, Hines does not state in her amended complaint what charge was leveled against her, who issued the ticket, or the what the circumstances were surrounding the charge.

On January 8, 2003, Sergeant Smith appeared at Hines's cell with two other officers. First, the two officers woke her up and pat frisked her. Sergeant Smith then instructed one of the officers to look in cell for an ashtray and check the toilet for ashes. During the search, Sergeant Smith and the two officers trashed her cell, scattering clothing everywhere, spilling her pills, and

dumping her food everywhere. Plaintiff also claims that after the search some of her legal papers and clothes were missing.

Because Hines was again under the influence of Antivert and methal health medications, she did not realize the mess until she awoke the next morning. When Hines saw her cell in a messy state, she became "hysterical" and was escorted to the mental health unit, where she remained until she "regained some self control." Hines then returned to her cell. Because Hines has "bad feet," upon returning to her cell she lost her balance and fell on her back, rendering her unable to stand. As a result of the fall, Hines was wheelchair bound for eleven days and was told that she would need physical therapy.

On July 19, 2003, Hines went to the law library to meet with a law clerk to prepare her petition for a writ of habeas corpus. Hines had scheduled to meet with the law clerk, another inmate named Marleena, at 6pm. When she arrived at the law library, however, Hines was told that Marleena had gone to the package room. As a result, Hines never got to work with Marleena on her habeas corpus petition.

Hines complained to Sergeant Smith that Marleena had not followed procedure, because Marleena knew she was supposed to meet with Hines but instead went to the package room. Sergeant Smith refused to write Marleena a ticket. Hines now claims that Sergeant Smith's failure to write Marleena a ticket, even though she failed to follow procedure, is disparate treatment, and that Marleena should have received a ticket, which would have resulted in Marleena losing he residence on the honor floor, where the inmates "have much more prestige and privileged (sic) than the rest of the inmates in Bedford Correction."

On another occasion, Sergeant Smith refused to allow Hines to use that photocopy machine in the school building, even though the machine that Hines would usually use was broken.

Instead, Sergeant Smith told Hines to send the originals if she could not make copies. Hines now suggests that Sargeant Smith should have allowed her to use the other copier, and his failure to do so amounts to disparate treatment.

B. Claims Against Dr. Goldstein and Nurse Williams

First, Hines alleges that Dr. Goldstein failed to respond to Hines's requests for new medication after her existing pills had expired. As a result, Hines was forced to continue taking old, expired pills. Hines does not specify when she asked Dr. Goldstein for new medication and does not attach any letters proving that such requests were actually made.

In January 2004, Hines was schedule to undergo a colonoscopy at Mount Vernon Hospital. During an electrocardiogram performed prior to the procedure in the regional medical unit of Bedford Hills, Hines was informed that her antidepressant drugs affected her heart rhythm. Hines spent the night in the infirmary, and the next day Dr. Seyaged, an emergency room doctor, told her she would have to undergo a stress test to determine how much medication she would require for the colonoscopy, but that she could return to her cell. When Hines was preparing for discharge, however, Dr. Goldstein told her that she could not leave the hospital because she was "in grave condition" and needed "very close monitoring." Hines now complaints that Dr. Goldstein kept Hines captive in the regional medical unit "all weekend long with no need for emergency intervention!" Hines claims that she lost 20 pounds during her stay in the regional medical unit, and that she was "turning very angry" because they would not allow her to take her antidepressant medications.

On January 7, 2004, Hines was transported to the colonoscopy. No specialist was available to perform the procedure. Hines claims that she "never agreed to the exploratory test" and eventually signed a refusal of treatment form. Hines claims that she was called to the regional

medical unit 19 times in January 2004 to sign medical refusal forms

On February 2, 2004, Hines requested a new pair of New Balance sneakers because he old sneakers were too worn and dirty. Hines claims that she needed these sneakers because she has bad feet, and the New Balance sneakers work better for people with foot conditions. On April 1, 2004, Nurse Williams advised Hines that her request had been denied because the State had discontinued distribution of New Balance sneakers. Hines alleges that this is not the real reason her request was denied, and that upon forwarding her request for the sneakers Nurse Williams did not tell the authorities the "truth" about her foot condition. Further, Nurse Williams "lied" and told authorities that Hines had only received sneakers in 2001, when in fact Hines had also received New Balance sneakers in 2002 and 2003.

Because Hines could not get a new pair of New Balance sneakers, Hines was forced to continue wearing her old pair. Hines developed an abscess at the bottom or her foot, which a doctor told her was a direct result of wearing dirty sneakers. Hines claims that since June 2004, she has not been able to walk in her old sneakers because of the abscess, has lost 40 pounds, and she is unable to eat. Hines does not explain why the abscess in her foot has prevented her from eating.

### PROCEDURAL HISTORY

The Pro Se Office of the Southern District of New York received Plaintiff's original complaint on October 27, 2003. (Mukasey Order, July 29, 2004, at 1 n.1.) In an Order dated July 29, 2004, Chief Judge Michael Mukasey granted Plaintiff's request to proceed in forma pauperis, but dismissed certain of Plaintiff's claims with prejudice for failure to allege a constitutional violation and ordered Plaintiff to amend her complaint in accordance with Rule 8 of the Federal Rules of Civil Procedure to replead her allegations of deliberate indifference to medical needs and harassment with greater particularity. (Mukasey Order, July 29, 2004.) Judge Mukasey ordered

Plaintiff to "give the dates of all relevant events, the names of all relevant persons and a description of what actually occurred," to "detail her allegations of indifference and medical needs and harassment with factual support," and to lay out her claims in "separate, numbered paragraphs." (Id.)

The Pro Se Office received Plaintiff's amended complaint on September 27, 2004. (Am. Compl. 1.) While Plaintiff added additional claims and facts to her amended complaint, she failed to follow any of the instructions provided in Judge Mukasey's July 29, 2004 Order. Plaintiff's amended complaint still fails to "give the dates of all relevant events" or "detail her allegations of indifference and medical needs and harassment with factual support"; nor is it organized in "separate, numbered paragraphs."

Defendants now move to dismiss Plaintiff's amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants raise multiple grounds for dismissal: (1) Plaintiff failed to administratively exhaust all of her claims; (2) Plaintiff's claims against Sergeant Smith do not amount to a federal constitutional violation; (3) Plaintiff fails to plead any claims with respect to Dr. Goldstein and Nurse Williams; (4) Defendants are entitled to qualified immunity; and (5) the court lacks subject matter jurisdiction under the Eleventh Amendment to the U.S. Constitution. The Court agrees with Defendants on the first three grounds for dismissal, and so does not reach the question of qualified immunity or lack of subject matter jurisdiction under the Eleventh Amendment. Accordingly, the Court GRANTS Defendants' motion to dismiss in its entirety.

**DISCUSSION**

I. CLAIMS PREVIOUSLY DISMISSED BY THE COURT

The Court's July 29, 2004 Order already dismissed with prejudice the following

claims: (1) Plaintiff's claim that, on December 19, 2003, Sergeant Smith gave her a false misbehavior report, which resulted in a 13-day loss of recreation privileges; (2) Plaintiff's claim that she slipped and fell on November 24, 2002; (3) Plaintiff's claim that Sergeant Smith unfairly ordered two officers to search her cell on January 8, 2003, and her related claim that the officers left her cell in a messy state, causing her to become "hysterical" and later to slip and fall. As the Court previously explained, the facts giving rise to these claims do not rise to the level of constitutional violations, and therefore these claims are not cognizable under 42 U.S.C. § 1983. To the extent that Plaintiff attempts to replead these claims in her amended complaint, the Court's July 29, 2004 Order is the law of the case, and the Court will not revisit these claims here.

## II. REMAINING CLAIMS

### A. Failure to Exhaust Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all prisoners seeking redress for prison circumstances or occurrences," regardless of whether a prisoner complains about general prison conditions or about a specific incident. Porter v. Nussle, 534 U.S. 516, 520 (2002); Lawrence v. Goord, 304 F.3d 198, 200 (2d Cir. 2002). It is well settled that this exhaustion requirement is mandatory. Porter, 534 U.S. at 520; Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004).

The New York State DOCS has its own internal administrative procedure. DOCS regulations allow inmates to file grievances to resolve complaints about DOCS policies, as well as "harassment grievances" for "allegations of employee misconduct meant to annoy, intimidate, or harm an inmate." See 7 N.Y.C.R.R. §§ 701.2(a), 701.2(e), 701.7, and 701.11. This process, known

as the "Inmate Grievance Program" ("IGP"), is intended "to reduce the quantity and improve the quality of prisoner suits" and afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter, 534 U.S. at 524-25.

The DOCS IGP procedure has three steps. See NY Correction Law § 139 (McKinney's 2003). First, an inmate must file a harassment grievance with the Inmate Grievance Review Committee ("IGRC") at his facility. 7 N.Y. Codes R. & Reg. ("NYCRR") § 701.7(a)(1); see also Directive 4040, New York State Department of Corrections, June 8, 1998 (setting forth the inmate grievance procedure in New York prisons). A grievance is timely filed if it is filed within fourteen (14) days of the alleged incident. 7 NYCRR § 701.7(a)(1). If the inmate failed to file the grievance within the fourteen-day window, the IGRC will still consider the grievance timely filed if the inmate presents mitigating circumstances that justify the delay. Id. If the IGRC is unable to resolve the dispute to the satisfaction of the grievant, a hearing must take place within seven (7) days of the IGRC's receipt of the grievance. Id. After the hearing, the IGRC issues a decision or dismisses the grievance. Id. Second, within two days of the inmate's receipt of the IGRC's decision, or if the IGRC does not respond to the inmate's grievance within the specified time period, the inmate may take an appeal to the Superintendent, who independently reviews the grievance and issues a response. Id. §§ 701.7(b)(1), 701.8. Third, if the inmate is unsatisfied with the Superintendent's decision, the inmate may take an appeal to the Central Office Review Committee. Id. § 701.7(c)(1).

An inmate may not file an action in federal court until she first seeks administrative relief under the DOCS IGP, and pursues it through all levels of appeal. Martinez v. Williams R., No. 04 Civ. 1938 (WCC), 349 F. Supp. 2d 677, 682 (S.D.N.Y. 2004); Soto v. Belcher, No. 01 Civ. 7520 (VM), 339 F. Supp. 2d 592, 595 (S.D.N.Y. 2004); see also Taylor v. New York State Dept. of

Corrections, No. 03 Civ. 1929 (PKC), 2004 WL 2979910, at *4-5 (S.D.N.Y. Dec. 22, 2004) (stating that defendants could raise exhaustion as a defense in their motion to dismiss where plaintiff inmate failed to adequately plead that he took all required appeals through the IGP process). If an inmate files a federal lawsuit without first exhausting the DOCS IGP procedure, the Court must dismiss the action, as the exhaustion requirement is mandatory and may not be waived.

It is unclear whether Plaintiff properly exhausted her remedies through the DOCS IGP process before filing this action. While Plaintiff claims that she reported Sergeant Smith to Ex-Deputy of Security McElroy after Sergeant Smith ordered Plaintiff's cell flap locked in ninety-degree weather, she never filed a formal grievance. In fact, Plaintiff provides no evidence whatsoever that she ever filed a grievance against Sergeant Smith. On this basis alone, the Court must dismiss Plaintiff's claims against Sergeant Smith.

Similarly, while Plaintiff provides evidence that she complained to the Grievance Committee that Dr. Goldstein improperly detained her in the regional medical unit, there is no evidence that Plaintiff appealed the denial of her grievance to the Central Office Review Committee. An inmate must pursue the DOCS IGP process through all levels of appeal before filing a federal action. Martinez, 349 F. Supp. 2d at 682; Soto; 339 F. Supp. 2d at 595. Since Plaintiff did not appeal her grievance as required, even if Plaintiff's grievance was otherwise proper (i.e., sufficiently specific and timely), this Court would still be required to dismiss her claims against Dr. Goldstein.

Plaintiff did file a grievance complaining of Nurse Williams's failure to get her New Balance sneakers, which she pursued all the way to the Central Office Review Committee. Because Plaintiff exhausted her administrative remedies with regard to her single claim against Nurse Williams, the Court may review this claim on the merits.

Interestingly, Defendants submit evidence that Plaintiff filed additional grievances in the year 2003. According to a print out provided as an exhibit to Defendants' motion to dismiss, Plaintiff filed a grievance on January 16, 2003 titled "Alleged Harassment" and two grievances on June 24, 2003 titled "Wants Proper Medical Care" and "Wants LL Assistance & Not Be Deprived." (Defs.' Mem. Law Supp. Mot'n Dismiss, Ex. 1.) Given these vague descriptions, it is impossible for the Court to determine if these grievances any in any way related to the allegations set forth in Plaintiff's amended complaint. In an excess of caution, and in recognition of Plaintiff's pro se status, the Court will address the merits of Plaintiff's remaining claims.

B. Merits of Plaintiff's Remaining Claims

Liberally construed, Plaintiff's claims of harassment by Sergeant Smith fall in two categories: (1) equal protection under the Fourteenth Amendment; and (2) Cruel and Unusual Punishment in violation of the Eighth Amendment.

*1. Equal Protection Claims Against Sergeant Smith*

Plaintiff complains that Sergeant Smith treated Plaintiff differently from other inmates, in violation of Plaintiff's Fourteenth Amendment right to equal protection. Plaintiff alleges that Sergeant Smith confiscated some of her supplies, so that Plaintiff had less monthly supplies than other inmates on her wing, and refused to give Plaintiff extra food that was offered to other inmates. Plaintiff also alleges that Sergeant Smith showed favoritism towards another inmate—identified only as "Marleena"—by refusing to write a ticket against her when she violated procedure, told Plaintiff to cut her fingernails when they got too long (even though another unidentified inmate's nails were "twice as long"), and refused to allow Plaintiff to use the copy machine in the school building when the other copier was broken. Plaintiff now suggests that this behavior demonstrates a pattern of disparate treatment by Sergeant Smith in violation of the

11

Fourteenth Amendment.

While equal protection claims, properly pled, are cognizable under 42 U.S.C. § 1983, plaintiff fails to allege sufficient facts to sustain a claim. As the Court previously explained:

> Complaints which contain only vague or conclusory accusations and no specific facts regarding the alleged wrongdoing do not allow defendants to frame an intelligent defense and are subject to dismissal under 28 U.S.C. § 1915. Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 997 (2d Cir. 1987); see also Fine v. City of New York, 529 F.2d 70, 73 (2d Cir. 1975) (civil rights complaints "are plainly insufficient unless they contain at least some allegations of fact indicating a deprivation of civil rights"). Simply concluding that [Plaintiff] was treated differently from another inmate, without any factual support, fails to allege an equal protection claim.

(Mukasey Order, July 29, 2004, at 5.) Here, as in Plaintiff's original complaint, Plaintiff's allegations of disparate treatment are vague, conclusory, and devoid of any factual support from which the Court could find that these incidents amounted to a constitutional violation. Judge Mukasey already gave Plaintiff an opportunity to remedy this lack of specificity. Plaintiff failed to do so. Accordingly, Plaintiff's equal protection claims are dismissed.[1]

   *2. Eighth Amendment*

   *(a) Eighth Amendment Claims Against Sergeant Smith*

Plaintiff alleges that Sergeant Smith instructed an officer to lock Plaintiff's cell flap when the temperature was around 90 degrees, so that Plaintiff was forced to sweat in her cell. The Court liberally construes this allegation as a claim of cruel and unusual punishment in violation of the Eighth Amendment. This claim fails for two reasons. First, Plaintiff fails to provide the date of the alleged incident or to describe the circumstances surrounding the incident. Therefore, defendants are unable to formulate an intelligible defense, subjecting Plaintiff's claim to dismissal

---

[1] Plaintiff also suggests that these claims were retaliatory, but again Plaintiff fails to provide facts sufficient to raise a valid claim for retaliation.

under 28 U.S.C. § 1915. Second, Sergeant Smith's conduct does not rise to the level of cruel and unusual punishment. To sufficiently allege a violation of the Eighth Amendment, a plaintiff must demonstrate that the "punishment" to which she was subjected was "objectively, sufficiently serious," so that it rises to the constitutionally prohibited level of cruel and unusual punishment. See Boddie v. Schneider, 105 F.3d 857, 861 (2d Cir. 1997). Plaintiff fails to do so. Plaintiff simply alleges that Sergeant Smith ordered an officer to lock Plaintiff's cell flap on a hot day. She does not allege that Sergeant Smith touched Plaintiff or used any physical force, that Sergeant Smith left Plaintiff locked in her cell for an extended period of time in the unbearable heat, or that Plaintiff suffered any injury as a result of Sergeant Smith's orders. Thus, Plaintiff does not plead "punishment" sufficiently serious to amount to a violation of the Eighth Amendment.

Plaintiff also alleges that on November 24, 2002, after a fall completely unrelated to the acts of any of the named defendants, Sergeant Smith ordered a nurse in the regional medical unit to wake Plaintiff up and "get a story out of her," so the nurse shone a flashlight in Plaintiff's eyes and slapped her face. Plaintiff suggests that this physical contact amounted to an excessive use of force. Not every touch by a prison official, however, gives rise to a federal cause of action. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). Shining a light in Plaintiff's eyes and slapping her in the face to wake Plaintiff from a drug-induced stupor was, if anything, a de minimis use of physical force, which is not a constitutional violation. See Hudson, 503 U.S. 9-10.

*(b) Eighth Amendment Claims Against Dr. Goldstein*

Plaintiff alleges that Dr. Goldstein tortured her by holding her in the regional medical unit without cause for an entire weekend. The Court is unsure whether Plaintiff alleges that keeping Plaintiff in the medical unit amounted to cruel and unusual punishment or deliberate indifference to Plaintiff's medical needs. This distinction is academic, however, as Plaintiff's claim fails under

13

either theory. To sustain a claim for violation of the Eighth Amendment, Plaintiff must prove that the defendant acted with malice or a "sufficiently culpable state of mind." See Estelle v. Gamble, 429 U.S. 97, 104-06 (1976); Boddie v. Schneider, 105 F.3d 857, 861 (2d Cir. 1997) (citations omitted). Plaintiff fails to do so. Under Plaintiff's own version of the facts, Dr. Goldstein kept Plaintiff in the medical unit because she feared Plaintiff's health was poor and she needed "close monitoring." This demonstrates that Dr. Goldstein acted with a legitimate concern for Plaintiff's health, not with malice or indifference to Plaintiff's medical needs. Plaintiff's belief that her detention was unnecessary is not sufficient to create a federal cause of action. As long as Dr. Goldstein's actions were well intentioned, Plaintiff's claim is not cognizable under § 1983.

B. Deliberate Indifference to Medical Needs

In vague and conclusory terms, Plaintiff also alleges that Dr. Goldstein ignored Plaintiff's request for new medication after her existing pills expired. Plaintiff provides no dates or details from which the Defendants and the Court could assess Plaintiff's claims or determine whether Dr. Goldstein's failure to provide new pills rose to the level of deliberate indifference. Accordingly, this claim is dismissed.

*(c) Eighth Amendment Claims Against Nurse Williams*

Plaintiff raises only one claim against Nurse Williams. In sum, Plaintiff alleges that Nurse Williams lied to authorities about medical condition of Plaintiff's feet so that Plaintiff would not get a new pair of New Balance sneakers. As a result, Plaintiff suffered an abscess on her foot from wearing old, dirty sneakers. To sustain a claim under the Eighth Amendment, Plaintiff must plead that Nurse Williams intentionally denied her care that was objectively necessary. Plaintiff fails to plead the requisite intent. While Plaintiff alleges that Nurse Williams "lied" to authorities, this allegation is completely conclusory. Nurse Williams tried to get Plaintiff the sneakers she

14

desired. To the extent that Nurse Williams failed to adequately explain Plaintiff's foot problems on the sneaker request form, this oversight was not intentional; mere negligence or inadvertence is insufficient to meet the deliberate indifference standard. Thus, Plaintiff fails to make out a claim against Nurse Williams under the Eighth Amendment.

## CONCLUSION

Defendants' motion to dismiss Plaintiff's amended complaint is GRANTED. All claims set forth in Plaintiff's amended complaint are hereby DISMISSED with prejudice. The Clerk of the Court is directed to enter judgment and close out this case.

Dated: New York, New York
July 17, 2006

SO ORDERED

PAUL A. CROTTY
United States District Judge

*Copies Mailed To:*

Sylvia Hines
(#99-G-0972)
Bedford Hills Correctional Facility
247 Harris Road
Bedford Hills, NY 10507-2499
PRO SE

Lisa E. Fleischmann
Lester, Schwab, Katz and Dwyer LLP
120 Broadway
New York, NY 10271

Neil Shevlin
New York State Department of Law (EPB)
Attorney General of the State of New York
The Capitol
Albany, NY 12224